## C. C. MAYO v. D. U. MARTIN.

(Filed 12 September, 1923.)

**1. Evidence—Nonsuit.**

The evidence must be taken most strongly in favor of the plaintiff for the purpose of defendant's motion of a nonsuit and dismissal of the action.

**2. Courts—Jurisdiction—Accounts Severable—Evidence—Demurrer.**

The plaintiff owned a store, and agreed with the defendant, who operated a sawmill, that the former would pay, in goods, etc., the orders on him by the latter, evidenced by "plucks" or brass checks, given to his mill employees, and the latter would make weekly settlements therefor in cash: *Held*, the agreement for a weekly settlement was divisible and may be split up into several causes of action and brought before a justice of the peace when the amount is jurisdictional in his court; and the fact that an account was stated between the parties, showing a total balance due from various weekly accounts within the jurisdiction of the Superior Court, does not oust the jurisdiction of the justice of the peace or confer exclusive jurisdiction on the Superior Court; and a demurrer to the evidence tending to establish such facts is properly overruled.

**3. Evidence—Burden of Proof—Orders—Defendant's Possession of Evidence of Indebtedness.**

The plaintiff agreed to accept the orders of defendant given on him to the latter's employees, in goods, etc., evidenced by "plucks," or brass checks, settlements to be made weekly between them, which the defendant failed to do. The defendant admitted that he had got from the plaintiff

1—186

the merchandise accordingly, but claimed he had paid for them: *Held*, the possession by the defendant of these "plucks," or brass checks, and produced at the trial, could only be considered by the jury as evidence of payment.

APPEAL by defendant from *Connor, J.*, at May Term, 1923, of BEAU-FORT.

Civil actions consolidated, tried before Hon. George W. Connor, judge presiding, and a jury, at May Term, 1923, of the Superior Court of Beaufort County, on appeals from a justice of the peace.

There were eleven actions separately instituted before a justice of the peace. In apt time, in the court of the justice of the peace, the defendant moved to dismiss upon the ground that they constitute a single action, which had been split for the purpose of giving jurisdiction to the justice of the peace.

Upon the calling of these cases in the Superior Court, the plaintiff moved that the eleven cases be consolidated and tried together. The defendant, in apt time, renewed his motion in each case to dismiss for want of jurisdiction and upon the suggestion of the court, without waiving the said motion, but reserving all rights with respect to same. Defendant consented that a jury should be impaneled and hear the evidence, and that at the conclusion of the evidence defendant's motion to dismiss for want of jurisdiction in each case should be heard and determined; any issue of fact affecting said motion to be submitted to the jury, and motion with respect to fact determined after verdict rendered. The plaintiff consented that the actions should be consolidated upon the conditions stated by defendant, both plaintiff and defendant being present with their attorneys of record.

*Wiley C. Rodman for plaintiff.*
*Stephen C. Bragaw and Harry McMullan for defendant.*

CLARKSON, J. The essential facts of this case are as follows:

According to the testimony of Mayo, in 1920, and prior thereto, Martin was operating a mill and Mayo a store in the village of South Creek. Until the end of the year 1920 he had been able to finance Martin, with monthly settlements, but at the end of 1920 and the beginning of 1921 he testified that he canceled this arrangement with Martin and told him his account was behind, and that the people he owed were after him, and that he would have to go on a cash basis, and that Martin would have to pay him by the week. Mayo testified that, after the first of January, it was agreed that the orders issued by him were to be paid by the week. Pursuant to this arrangement, Mayo for a certain number of weeks paid the orders given on him by Martin, keeping the orders

for each week separate and presenting them for payment weekly to Martin. On striking a balance for the 1920 account, it was agreed between Mayo and Martin that there was a balance due Mayo of $1,318.27. Mayo testified that, in payment on this account, Martin gave him certain notes, aggregating $1,200, which he turned over to his creditors, and on which both Martin and Mayo are now being sued. This left a balance on the 1920 account of $118.27.

The 1920 account, or the balance due thereon, formed the basis of one suit before the magistrate. The weekly orders which had been paid by Mayo for Martin for a certain number of weeks formed the basis of eight suits, each week being sued on as a separate account. In addition to this, Mayo claimed that Martin had issued certain checks on banks, which he had cashed at the request of the payee therein. These checks had been presented for payment to the banks and payment had been refused. These checks aggregated $151.32, to which was added two items of interest paid by Mayo for Martin at his request, being interest on the notes for $1,200 given in payment of the 1920 account, formed the basis of the other suit. One suit was on a farm account for 1921.

The eleven actions against Martin were:

1. One suit for $118.27, brought for the balance due on a book account for 1920.

2. Eight suits were brought, based on orders issued on Mayo by Martin and paid by Mayo weekly, the orders being kept separate and apart and having been presented for payment weekly.

3. One suit was brought, based on checks issued by Martin against certain banks, payable to persons other than Mayo, but cashed by Mayo, and had been presented to the banks, and on which payment had been refused for "insufficient funds." These checks amounted to $151.32, and to this item has been added certain discount, which had been paid by Mayo at Martin's request, being the interest on said notes which Martin had given him in settlement of a part of Martin's 1920 account.

4. One suit was brought on a farm account, independent of other matters.

According to the testimony of Martin, he owned and operated a saw-mill at South Creek, and sold out to the plaintiff, Mayo, a store or commissary which had been operated by him in connection with said saw-mill. By agreement between Mayo and himself, he was to pay off his hands, in part, through this store operated by Mayo. The system was that he furnished his hands with "brass plucks," or a piece of round metal, stating thereon that the same was good for so much money in trade at Mayo's store. Afterwards, by reason of having lost some of these plucks, slips of paper were used in place of the brass plucks, serving the same purpose.

This business was conducted for a considerable period, and from time to time Mayo and Martin had settlements of their business involving these transactions, Mayo and Martin both agreeing that in June, 1920, there was a settlement in full between them, and a balance struck. On 31 December, 1920, Martin claimed that he and Mayo had another settlement, in which he paid the plaintiff up in full for all orders, checks, etc., taken up by him to that time. The plaintiff,. Mayo, denied that a settlement was made at that time, but claimed that the amount due by Martin was agreed upon between them, and that this amount was $1,318.27.

Martin claimed that on 1 January, 1921, or about that time, the plaintiff Mayo surrendered and delivered to him all of the brass plucks and orders which he had taken up for him at his store. He claimed that this fact was admitted by Mayo, but that Mayo contended that notwithstanding the fact that he surrendered these evidences of indebtedness to Martin, that Martin did not in fact at that time, or any previous time, pay him therefor. Martin testified and contended that on that date he paid the plaintiff Mayo the balance due by him on these orders and plucks, and that the same were surrendered to him in consideration of full settlement, and Martin produced the orders and checks at the trial covering these items, and had the same in his possession.

Martin claimed that it is admitted by Mayo that prior to 1 January, 1921, it was agreed between Mayo and himself that they would have monthly settlements of their business, but Martin denied that a new agreement was made by which Mayo was to receive settlements on a weekly basis.

After 1 January, 1921, the business continued, and thereafter it is admitted by Martin that he became indebted to Mayo in the sum of approximately the amount claimed by Mayo in the trial—$1,529.82. Martin contended that Mayo admitted that he paid him in checks and notes an amount more than sufficient to pay the said indebtedness which occurred after 1 January, 1921, but the plaintiff Mayo contended that he applied the said payments in settlement of what he claims was the 1920 account rather than the 1921 business, and after having so applied it, it left the defendant Martin indebted to him in the sum of $118.27 for the 1921 business.

There were twelve issues submitted to the jury. Under the charge of the court, the jury found for the plaintiff on all issues submitted to them.

The first issue was: "Were these suits properly instituted in a court of a justice of the peace?" The jury responded "Yes."

To the other eleven issues the jury responded "Yes," and found the amounts due all within the jurisdiction of the justice of the peace, as shown by the record.

MAYO v. MARTIN.

· The entire controversy in the case, from the exceptions taken by defendant, can be considered under two heads: Was the plaintiff's claim divisible and could it be split up and sued on as was done in eleven cases before the justice of the peace, or was it indivisible and an entire contract and incapable of being divided and split up, so that suits could only be brought in the Superior Court?

Exceptions 1, 2, 3 and 4 all relate to the refusal of the court for nonsuit and to direct a verdict in favor of the defendant predicated upon the contention that it appeared from all the evidence that at the time the eleven actions were instituted the amount due by defendant to plaintiff, as claimed by the plaintiff, was in excess of the jurisdiction of the justice of the peace, and the claim was improperly divided and split into eleven actions for the purpose of giving the justice of the peace jurisdiction, and the suits should be dismissed for want of jurisdiction.

The main facts to consider in these exceptions may be stated in very few sentences:

The defendant was operating a mill and the plaintiff a store. The defendant issued orders to his mill help; these orders were "brass plucks," or a piece of round metal stating thereon that the same was good for so much money in trade at Mayo's store. Afterwards, by reason of having some of these "plucks" lost, slips of paper, orders on plaintiff, were used in place of the "plucks." The agreement between the parties was that the plaintiff was to pay these orders given to the mill help by defendant, and that the defendant would pay him each week, and the orders issued were to be paid by the week. Pursuant to this agreement, the defendant, for a certain number of weeks, paid the orders. The plaintiff kept each week's orders separate and presented them for payment weekly to defendant. Eight of the suits are for the orders due for each respective week. The other three suits are not involved in this aspect of the case.

We think his Honor was correct in refusing to nonsuit plaintiff and dismiss for want of jurisdiction.

The evidence must be taken most strongly in favor of the plaintiff for the purpose of a nonsuit and dismissal of an action. The evidence showed that plaintiff's claim was divisible—each week payment was to be made and orders for each week kept separate. The plaintiff had a right to bring separate actions for each week's orders. The agreement between the parties was not indivisible or an entire contract, incapable of being divided and split up, so that suits could be brought separately for each week's orders.

The principle is laid down by *Clark, C. J.*: "The items of the plaintiff's claim having been incurred under different contracts and at different times, the plaintiff could maintain a separate action for the

amount due under each contract, and if under two hundred dollars, before a justice of the peace, though the aggregate be in excess of that sum. It is optional with the creditor in such cases to join the amounts and bring an action therefor, or upon each item separately." *Copland v. Tel. Co.,* 136 N. C., 11.

"A party has a right to 'split up' his account, so as to include a certain number of items under one warrant, and a certain number of items under another, and so on, so as to bring the several warrants under the jurisdiction of a justice of the peace." *Caldwell v. Beatty,* 69 N. C., 365.

"A creditor, whose account consists of several items, either for goods sold or labor done at different times, each of which is for less than $200, although the aggregate of the account exceeds $200, may sue before a justice for any number of such items not exceeding $200. If, however, the debt is an entire one, consisting of but one item, and exceeds $200, it cannot be divided to give the justice jurisdiction." *Boyle v. Robbins,* 71 N. C., 130.

"One who has an account for articles sold, the different items of which constitute separate transactions, and the entire amount of which exceeds the jurisdiction of a justice, may split it up so as to bring his actions within the jurisdictional amount, the account not having become an account stated, by reason of being presented as a whole, and not objected to within a reasonable time." *Simpson v. Elwood,* 114 N. C., 528.

*Rodman, J.,* who rendered the decision in *Boyle v. Robbins, supra,* says: "A seller of a horse for $300 cannot divide his account and have two actions before a justice; neither can a carpenter who had built a house upon contract for an entire sum for over $200, nor a material-man who had furnished material upon an entire contract." In such cases the contract was "indivisible" and "entire." If the contract was to rent a house for a year at $1,200, monthly payments of $100 to be made on the first of each month, a suit could be brought each month before a justice of the peace for each $100 as due. The contract itself "splits" up the payments.

The other proposition is presented in Exceptions 5, 8 and 9. (Exceptions 6 and 7 were abandoned under the Rule in the brief of defendant.) Defendant requested the court to instruct the jury as follows: "The main controversy in these cases is as to the payment of the 1920 account, Mayo contending that prior to the payment to him of the $500 in notes payable to O. Marks, and $700 in notes to E. R. Nixon & Co., the defendant Martin was indebted to him on the 1920 account in the sum of $1,318.27, and the defendant Martin claiming that the said indebtedness had been settled in full on or about 1 January, 1921. The plaintiff Mayo having admitted that he surrendered to the defendant Martin

the orders or checks included in the 1920 account, and the same being in the possession of the defendant Martin prior to the time that the payments of $1,200 in notes above referred to were made, the law would presume that the said orders or checks had been paid at the time the same were delivered to the defendant Martin, and the burden of proof would be upon the plaintiff Mayo to establish, by the greater weight of the evidence, that at the time he surrendered the said orders or checks the same were not paid for by the defendant Martin, and if the plaintiff has failed to so satisfy the jury, the jury should answer the first to twelfth issues 'Nothing.' "

The court declined to give this instruction, and defendant excepted.

The court instructed the jury as follows: "I instruct you, inasmuch as Mr. Martin admits that he got from Mayo goods, wares and merchandise and other things of value, making a total of $2,013.45, the law puts upon him the burden to satisfy you that he has paid it, the entire amount, then Mr. Mayo is entitled to have you answer this issue in such sum as you may find is the balance due, which he contends is $118.27." To this portion of the court's charge defendant excepted.

The court instructed the jury as follows: "I instruct you further, should you find that Mr. Martin admits owing Mr. Mayo and admits the amount, then the burden is on Martin to satisfy you, not by the greater weight of the evidence, but to satisfy you that he has paid it." To this portion of the court's charge the defendant excepted.

These exceptions go to the charge of the court as given, and to the refusal of the court to charge the jury that under the evidence in the case the surrender by Mayo of the orders, brass plucks and evidence of indebtedness to Martin would create a presumption which would shift the burden of proof.

The plaintiff testified that he and the defendant figured up the 1920 account. Their books showed that the defendant had a total debit of $2,013.45; both added it up exactly the same amount and the same credits, and this debt was reduced by credits, so that there was an agreed amount due on 1 January, 1921, of $1,318.27. Plaintiff said that when this was agreed upon he turned the orders over to defendant.

A settlement of accounts between parties is presumed to have taken in all matters of charge and discharge on both sides. *Kennedy v. Williamson,* 50 N. C., 284.

This evidence perhaps presents the question that, as the orders, checks, or plucks were turned over to the defendant and in his possession, the possession by the defendant raised a presumption of payment, and the burden was on the plaintiff to establish by the greater weight of the evidence that at the time they were surrendered they were not paid by the defendant Martin, and the court erred in not giving the prayer as

asked for and the instructions given. We cannot so hold. We think the court was correct. We do not think, under the circumstances and evidence in this case, that by the surrender of these orders or plucks, payment could be presumed from possession and that such a presumption was created as to shift the burden of proof. The possession would be a circumstance or some evidence which the jury could consider.

In *Pool v. Anderson,* 150 N. C., 624, the facts were : Action for recovery of land. Plaintiffs claim under John E. Gray who, on 12 March, 1879, executed a bond obligating himself to make title to S. N. Stockton upon the payment of $300, as stipulated by note or otherwise. The signature to the bond was attested by H. W. Wise. Stockton went into possession of the land upon the execution of the bond, and remained thereon until his death, devising it to the *feme* defendant, Cordelia Anderson, who has been in possession at all times since the death of said Stockton. Defendant alleged that the purchase-money for the land was paid by Stockton. For the purpose of sustaining the allegation of payment, defendant offered a note which was found among Stockton's papers. This note was payable to Jno. E. Gray. The note had no signature, but the paper appeared to have been cut off at the place for the signature. H. W. Wise's signature was on the note as a witness. Wise was dead. The note when found was wrapped in the bond for title and found among the papers of S. N. Stockton after his death. The court allowed this evidence, and the plaintiff excepted. *Connor, J.,* said : "The possession does not raise any presumption of payment or change the burden of proof. It is a circumstance, a condition open to explanation, but of sufficient relevancy to the fact in issue to entitle it to be considered in connection with other evidence to aid the jury in arriving at a correct conclusion."

There may be certain cases where payment of a bill or a note will be presumed from possession after maturity by the maker or acceptor, but the possession of these orders or brass "plucks" by the defendant, under the facts in this case, at most, would be only a circumstance to be considered by the jury.

The court did not err in refusing the motion to nonsuit the plaintiff and dismiss for want of jurisdiction, or in refusing the instruction prayed for, or in the charge as given.

No error.